UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

| | |
|---|---|
| JEFFREY DUVALL, | ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No.: 4:16-cv-00006-TWP-DML ) |
| NANCY A. BERRYHILL,[1] Acting Commissioner of the Social Security, Administration, | ) ) ) ) ) |
| Defendant. | ) |

# Report and Recommendation
## on Complaint for Judicial Review

This matter was referred to the Magistrate Judge under 28 U.S.C. § 636(b)(1)(B) and Fed. R. Civ. P. 72(b) for a report and recommendation as to its appropriate disposition. As addressed below, the Magistrate Judge recommends that the District Judge AFFIRM the decision of the Commissioner of the Social Security Administration that plaintiff Jeffrey Duvall is not disabled.

## Introduction

Jeffrey Duvall filed a Title II application for disability insurance benefits, alleging his disability began August 8, 2012. His application was denied initially and upon reconsideration. Following a hearing on April 22, 2015, Administrative Law Judge William C. Zuber issued an unfavorable decision in July 2015, and the

---

[1] Nancy A. Berryhill is now the Acting Commissioner of the Social Security Administration. As provided by Fed. R. Civ. P. 25(d), she is substituted for Carolyn W. Colvin as the defendant.

Appeals Council denied Mr. Duvall's request for review of this decision. Mr. Duvall now seeks judicial review of the Commissioner's decision. *See* 42 U.S.C. §§ 405(g), 1383(c)(3). The court will first describe the legal framework for analyzing disability claims and the court's standard of review, and then address Mr. Duvall's specific assertions of error.

## **Standard for Proving Disability**

To prove disability, a claimant must show that he is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). Mr. Duvall is disabled if his impairments are of such severity that he is not able to perform the work he previously engaged in and, if based on his age, education, and work experience, he cannot engage in any other kind of substantial gainful work that exists in significant numbers in the national economy. 42 U.S.C. § 423(d)(2)(A).

The Social Security Administration ("SSA") has prescribed a "five-step sequential evaluation process" for determining disability. 20 C.F.R. § 404.1520(a)(4). The first step inquires as to whether the claimant is currently engaged in substantial gainful activity; if so, then he is not disabled. Step two asks whether the claimant's impairments, singly or in combination, are severe; if they are not, then he is not disabled. A severe impairment is one that "significantly limits [a claimant's] physical or mental ability to do basic work activities." 20

C.F.R. § 404.1520(c). The third step is an analysis of whether the claimant's impairments, either singly or in combination, meet or medically equal the criteria of any of the conditions in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1. The Listing of Impairments includes medical conditions defined by criteria that the SSA has pre-determined are disabling, so that if a claimant meets all of the criteria for a listed impairment or presents medical findings equal in severity to the criteria for the most similar listed impairment, then the claimant is presumptively disabled and qualifies for benefits. *Sims v. Barnhart,* 309 F.3d 424, 428 (7th Cir. 2002).

If the claimant's impairments do not satisfy a listing, then his residual functional capacity ("RFC") is determined for purposes of steps four and five. RFC is a claimant's ability to do work on a regular and continuing basis despite his impairment-related physical and mental limitations. 20 C.F.R. § 404.1545. At the fourth step, if the claimant has the RFC to perform his past relevant work, then he is not disabled. But if he cannot perform his past relevant work, then the fifth step asks whether there is work in the relevant economy that the claimant can perform, based on his vocational profile (age, work experience, and education) and his RFC; if so, then he is not disabled.

The individual claiming disability bears the burden of proof at steps one through four. *Bowen v. Yuckert,* 482 U.S. 137, 146 n.5 (1987). If the claimant meets that burden, then the Commissioner has the burden at step five to show that work exists in significant numbers in the national economy that the claimant can

3

perform, given his age, education, work experience, and functional capacity. 20
C.F.R. § 404.1560(c)(2); *Young v. Barnhart,* 362 F.3d 995, 1000 (7th Cir. 2004).

## Standard of Review of the ALJ's Decision

Judicial review of the Commissioner's (or ALJ's) factual findings is deferential. A court must affirm if no error of law occurred and if the findings are supported by substantial evidence. *Dixon v. Massanari,* 270 F.3d 1171, 1176 (7th Cir. 2001). Substantial evidence means evidence that a reasonable person would accept as adequate to support a conclusion. *Id.* The standard demands more than a scintilla of evidentiary support but does not demand a preponderance of the evidence. *Wood v. Thompson,* 246 F.3d 1026, 1029 (7th Cir. 2001).

The ALJ is required to articulate a minimal, but legitimate, justification for his decision to accept or reject specific evidence of a disability. *Scheck v. Barnhart,* 357 F.3d 697, 700 (7th Cir. 2004). The ALJ need not address every piece of evidence in his decision, but he cannot ignore a line of evidence that undermines the conclusions he made, and he must trace the path of his reasoning and connect the evidence to his findings and conclusions. *Arnett v. Astrue,* 676 F.3d 586, 592 (7th Cir. 2012); *Clifford v. Apfel,* 227 F.3d 863, 872 (7th Cir. 2000).

## The ALJ's Sequential Findings

At the time of the alleged disability onset date, Mr. Duvall was 53 years old. He has a high school education and past relevant work experience as a truck driver and water superintendent. At step one, the ALJ found that Mr. Duvall had not engaged in substantial gainful activity since August 8, 2012, the alleged onset date.

4

At step two, he identified numerous severe impairments, including rheumatoid arthritis, shoulder tendonitis, mild degenerative joint disease, depression, and anxiety. At step three, the ALJ found that none of these severe impairments, singly or in combination, met or medically equaled a listing.

The ALJ next determined that Mr. Duvall has the residual functional capacity to perform medium work as defined in 20 C.F.R. § 404.1567(c) except he could:

- never climb ladders, ropes, or scaffolds;

- no more than occasionally perform overhead reaching;

- no more than frequently use his hands;

- not perform work that is fast-paced or quota driven;

- have no more than frequent contact with coworkers, supervisors, and the general public; and

- sustain concentration, persistence, or pace for no more than two hours at a time.

Dkt. 12-2 at p. 28.

With this RFC and based on the testimony of a vocational expert ("VE"), the ALJ found at step four that Mr. Duvall is unable to perform any past relevant work. The ALJ found at step five, however, that—considering Mr. Duvall's age, education, work experience, and RFC—he is able to perform other jobs existing in significant numbers in the national economy, including laundry worker, cleaner, and order filler. Dkt. 12-2 at p. 35.

## Analysis

Mr. Duvall argues first that the ALJ's decision is not based on "acceptable medical sources," but rather on "non-medical sources derived from an improper *ex parte* communication." Dkt. 15 at p. 6, 9. He also appears to challenge the ALJ's finding that Mr. Duvall had the RFC to perform the three jobs listed in the ALJ's decision, particularly because "[b]y the testimony of both the treating physician and the consulting expert, [Mr. Duvall] is not able to remain sitting or standing for more than two hours at best." Dkt. 15 at p. 12. The court considers these arguments below.

I. **Substantial evidence supports the ALJ's weighing of medical and other non-medical sources.**

Mr. Duvall contends first that the ALJ improperly weighed the medical source opinions and gave "controlling weight" to a statement from a non-medical lay witness, namely Mr. Duvall's daughter. Dkt. 15 at p. 8. In deciding the weight to be given to any medical opinion, the ALJ considers numerous factors, including the nature and extent of the treatment relationship, supportability, and consistency (with the record as a whole). 20 C.F.R. § 404.1527(c). In addition to evidence from "acceptable medical sources," the ALJ may use evidence from "other sources," as defined in 20 CFR § 404.1513(d), to show the severity of the individual's impairment(s) and how it affects the individual's ability to function. SSR 06-03p. These sources include, but are not limited to, spouses, parents and other caregivers, siblings, and other relatives. SSR 06-03p. As stated in the Ruling,

> [i]nformation from these "other sources" cannot establish the existence of a medically determinable impairment. Instead, there must be evidence from an "acceptable medical source" for this purpose. However,

6

information from such "other sources" may be based on special knowledge of the individual and may provide insight into the severity of the impairment(s) and how it affects the individual's ability to function.

SSR 06-03p. The ALJ assesses the claimant's RFC based on all of the relevant medical and other evidence, including "descriptions and observations of [the claimant's] limitations from [his] impairment(s), including limitations that result from [his] symptoms, such as pain, provided by [the claimant], [the claimant's] family, neighbors, friends, or other persons." 20 C.F.R. § 404.1545(a)(3).

Initially, Mr. Duvall appears to argue that the ALJ erred in not giving controlling weight to the opinion of his treating physician, James M. Havens, M.D. The ALJ noted that he had considered the many opinions set forth by Dr. Havens, spanning late 2012 through late 2014, but declined to give controlling weight—and, indeed, gave "very little weight[,]" Dkt. 12-2 at p. 34—to his opinions because "it appears that the overwhelming majority of his opinions bear little resemblance to his own treatment notes, the consultative examination findings, or the claimant's own hearing testimony." *See* 20 C.F.R. § 404.1527(c) ("If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight. . . . When we do not give the treating source's opinion controlling weight, we apply the factors listed in paragraphs (c)(2)(i) and (c)(2)(ii) of this section, as well as the factors in paragraphs (c)(3)

through (c)(6)[2] of this section in determining the weight to give the opinion."); SSR 96-2p (Explaining that the rule on controlling weight applies when four factors are present, including that the adjudicator must find the treating source's medical opinion is "well-supported" by "medically acceptable" clinical and laboratory diagnostic techniques, and the treating source's medical opinion also must be "not inconsistent" with the other "substantial evidence" in the individual's case record."). The ALJ went on to describe these inconsistencies at length. To cite one example: in a medical source statement dated January 15, 2014, Dr. Havens opined that in an eight-hour workday, Mr. Duvall could walk one hour, stand two hours, sit one hour, lift 20 pounds, bend infrequently, never crawl, and climb/descend 20 stairs. Dkt. 12-7 at p. 96. Yet contemporaneous treatment records from January 15 indicate that Mr. Duvall's physical examination was unremarkable, with Dr. Havens noting normal sensory, tone, muscle strength, and coordination, and

---

[2] Briefly, the factors listed in 20 C.F.R. § 404.1527(c) are as follows:

    (1) Examining relationship.
    (2) Treatment relationship.
        (i) Length of the treatment relationship and the frequency of examination.
        (ii) Nature and extent of the treatment relationship.
    (3) Supportability.
    (4) Consistency [with the record as a whole].
    (5) Specialization.
    (6) Other factors.

(Formatting altered).

continuing Mr. Duvall's non-steroidal anti-inflammatory medication at the same dosage.[3]  Dkt. 12-8 at p. 7.

As support for his position that the ALJ erred in not giving controlling weight to the opinion of Dr. Havens, Mr. Duvall points to *Larson v. Astrue*, 615 F.3d 744 (7th Cir. 2010), but the court finds that *Larson* is inapposite.  In *Larson*, the claimant's treating physician had treated her for several years on a monthly basis, was a psychiatrist (not a psychologist), and his opinion was consistent with the evidence in the record; moreover, aside from stating that the treating psychiatrist's opinion was entitled to "some weight," the *Larson* ALJ said nothing about the § 404.1527(c) required checklist of factors.  In this case, however, the ALJ noted Mr. Duvall's long gaps in treatment with Dr. Havens, as well as the inconsistencies between Dr. Havens's disability opinions and the doctor's own treatment notes, the consultative examination findings, and Mr. Duvall's own hearing testimony.  Thus, the ALJ provided good reasons for giving Dr. Havens's opinions very little weight. *See* Dkt. 12-2 at p. 33-34 (discussing the four factors of SSR 96-2p).

Mr. Duvall also contends that the ALJ used SSR 06-03p "to discount all of the medical evidence in the case at bar, basing the ruling instead on a recorded telephone conversation with the claimant's daughter."  Dkt. 15 at p. 7.  First, the

---

[3]  Additionally, at this same January 2014 office visit, Dr. Havens's notes indicate that Mr. Duvall presented for a follow-up physical exam complaining only of depression: "He describes a feeling of increased fatigue[,] lack of motivation[,] worsening depression[,] but he denies any suicidal thoughts.  Feels like meds need to be adjusted.  He has been on Prozac 20 for [sic] yrs."  Dkt. 12-8 at p. 6 (formatting altered).

ALJ did not discount all of the medical evidence. Rather, he discussed at length the medical record of Mr. Duvall's physical and mental impairments. With regard to his physical impairments, the ALJ acknowledged that Mr. Duvall has reported joint pain and swelling, that his blood work demonstrated an elevated rheumatoid factor but that the rheumatologist, Dr. Neustadt, was unable to make an absolute diagnosis of rheumatoid arthritis, that physical examinations and diagnostic imaging have typically demonstrated mild abnormalities, and that Mr. Duvall has been treated conservatively with prescription medication and reported benefit from taking aspirin. *See* Dkt. 12-2 at p. 29-30. With regard to Mr. Duvall's mental impairments, the ALJ accepted Mr. Duvall's history of depression and anxiety, but found that the "reports of symptoms appear out of proportion to the conservative medication management with minimal increases during the period under consideration." Dkt. 12-2 at p. 31. "Moreover, despite his reports of cognitive issues, the claimant demonstrated largely unremarkable mental status examinations." Dkt. 12-2 at p. 31. Thus, it is clear that the ALJ did not, as Mr. Duvall alleges, discount all of the medical evidence.

The ALJ did reject the September 2013 opinion of consultative examiner Alan Roth, M.D., on the ground that the check-the-box "Work Activities" section was both ambiguous by not specifying whether the limits on activities such as sitting and standing were "at one time or throughout an entire eight-hour workday," and "inconsistent with the examiner's own findings including a normal gait without the use of an assistive device, largely intact sensation and range of motion, and a full

10

5/5 motor function in all extremities." Dkt. 12-2 at p. 33 (discussing Dkt. 12-7). In light of the reasons given for rejecting Dr. Roth's opinion, the court finds that the ALJ did not err in doing so. To summarize, the ALJ gave some weight to the opinions of the state agency reviewing physicians and/or psychologists, and he based his RFC on the clinical findings, treatments, and diagnoses discussed above.

Finally, the court addresses the contention that the ALJ relied on SSR 06-03p to give "controlling weight" to a statement from a non-medical lay witness, namely Mr. Duvall's daughter, Ms. Tincher. In fact, the ALJ assigned Ms. Tincher's report "considerable"—not "controlling"—weight, in accordance with SSR 06-3p. *See* Dkt. 12-2 at p. 34. As discussed in SSR 06-03p, the ALJ may use evidence from "other sources" (in addition to "acceptable medical sources") to show the severity of the individual's impairment(s) and how it affects the individual's ability to function; these sources include spouses, parents, and other relatives. Ms. Tincher—described by the ALJ as a "'non-medical source' with no professional capacity[,]" Dkt. 12-2 at p. 34—lives next door to Mr. Duvall and was contacted by a state agency employee to develop the record regarding Mr. Duvall's activities of daily living.[4] According to the Report of Contact, Ms. Tincher told the agency employee that Mr. Duvall is able to maintain his personal hygiene, cook, drive, shop independently, operate a cell phone and computer, and does not have any trouble going out in public or being in

---

[4] Mr. Duvall himself provided Ms. Tincher's name and contact information in his April 2013 Disability Report, listing her as "someone (other than your doctors) we can contact who knows about your medical conditions, and can help you with your claim." Dkt. 12-6 at p. 5.

11

crowds. *See* Dkt. 12-6 at p. 40. The ALJ did not err in giving considerable weight to Ms. Tincher's opinion; because she lives next door and has frequent contact with Mr. Duvall, it follows that she would have "special knowledge" of him and would be able to provide insight into the severity of his impairments and how they affect his ability to function. *See* SSR 06-03p. As to Mr. Duvall's contention that the ALJ "cherry picked the lay witness statement, and ignored the obvious evidence of Duvall's disability that appeared there[,]" Dkt. 19 at p. 3 (Reply Brief of the Claimant/Appellant), the court notes that an ALJ need not mention every snippet of evidence in the record, but must connect the evidence to the conclusion and, in so doing, may not ignore entire lines of contrary evidence.[5] *Arnett,* 676 F.3d at 592. Moreover, the ALJ did discuss Mr. Duvall's testimony that if he overdoes something, such as lifting, he will stay in bed the entire next day. In other words, the court finds that the ALJ did not ignore this line of evidence.

There is also no merit to Mr. Duvall's argument that his daughter's telephone report to the agency employee was an improper *ex parte* communication, and the court finds that the authorities cited to the court on this issue—which are factually distinguishable, as they deal with direct communications with a judge—are inapposite. *See e.g.*, *Guenther v. Comm'r of Internal Revenue*, 889 F.2d 882, 884 (9th Cir. 1989) (in which Commissioner's counsel delivered *ex parte* a memorandum

---

[5] The following statements appear in the notes from the conversation with Ms. Tincher: "[S]ome days are good and some days are bad. [C]lmt sometimes will not get out of bed due to pain. [T]he limitations due to the pain upset clmt." . . . "[C]lmt is mentally fine and the pain is clmts main problem[.] . . . " Dkt. 12-6 at p. 40.

12

to the trial judge sometime prior to trial in the tax court); *Ludwig v. Astrue*, 681 F.3d 1047 (9th Cir. 2012) (in which an FBI agent told the ALJ directly—outside the presence of counsel, right after the hearing and before the ALJ had issued his decision—that the agent had observed the claimant in the parking lot walking with a normal gait rather than the exaggerated limp the claimant used inside of the Federal Courthouse). In any event, Mr. Duvall made no objection at the hearing when Exhibit No. 6E—the notes from Ms. Tincher's telephone conversation with the agency employee—was admitted into the record. *See* Dkt. 12-2 at p. 43.

## II.    Substantial evidence supports the ALJ's finding that Mr. Duvall can perform the jobs listed by the VE.

Finally, Mr. Duvall asserts that the ALJ erred in finding that he had the RFC to perform any of the jobs listed in the ALJ's decision. Mr. Duvall does not actually develop this argument, but instead states the following:

> Very simply, the medical and other evidence in the record of this case does not establish that [Mr. Duvall] could successfully perform or hold any of the jobs listed in the administrative law judge's findings. By the testimony of both the treating physician and the consulting expert, he is not able to remain sitting or standing for more than two hours at best. The administrative law judge erred in finding that [Mr. Duvall] had the residual functional capacity to perform any of these jobs.

Dkt. 15 at p. 12. As discussed above, however, the ALJ assigned "very little weight" to the opinions of Dr. Havens, Mr. Duvall's treating physician, and he rejected the opinion of the consultative examiner Dr. Roth; thus, the ALJ explained why he did not include the two-hour limitations in the RFC, finding that they were unsupported by the objective evidence regarding Mr. Duvall's alleged severe physical impairments.

Moreover, the ALJ called upon a vocational expert (VE) at the hearing to address the vocational impact of Mr. Duvall's limitations. In response to the ALJ's hypothetical, the VE testified that an individual with Mr. Duvall's limitations would be capable of performing the three jobs listed in the ALJ's decision. Mr. Duvall does not challenge whether the ALJ's hypothetical question to the VE accurately set forth the limitations the ALJ found were reasonably supported by the record. *See Jelinek v. Astrue*, 662 F.3d 805, 813 (7th Cir. 2011) ("[T]he hypothetical questions posed by an ALJ to a vocational expert must include only the physical and mental limitations the judge deems credible[.]"). Essentially, Mr. Duvall would like for this court to reweigh the evidence, which this court cannot do. In light of the above, the court concludes that Mr. Duvall has not shown the ALJ erred in finding that Mr. Duvall could perform the jobs listed in his decision.

## **Conclusion**

For the foregoing reasons, the Magistrate Judge recommends that the District Judge AFFIRM the Commissioner's decision that Mr. Duvall is not disabled.

Any objections to this Report and Recommendation must be filed in accordance with 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b). The failure to file objections within fourteen days after service will constitute a waiver of subsequent review absent a showing of good cause for that failure. Counsel should not anticipate any extension of this deadline or any other related briefing deadlines.

IT IS SO RECOMMENDED.

Dated: 2/1/17

Debra McVicker Lynch
United States Magistrate Judge
Southern District of Indiana

Distribution:

All ECF-registered counsel of record by email through the court's ECF system